UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/24/2013
```

------------------------------------------------------------------X
                                               :

ANIBAL ORTIZ,
                                               :

                      Plaintiff,          :           11 Civ. 7919 (JMF)

                                               :

             and                       :        MEMORANDUM OPINION

                                             :         <u>AND ORDER</u>

CITY OF NEW YORK, *et al.*,               :

                                             :

                     Defendants.        :

                                           :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       *Pro se* Plaintiff Anibal Ortiz sues the City of New York, New York City Police

Department ("NYPD") Officer Leonardo Deoliveira, and NYPD Officer James Braunreuther

pursuant to Title 42, United States Code, Sections 1983 and 1985, alleging claims arising out of

his arrest in the evening of October 17, 2010.  Defendants move, pursuant to Federal Rule of

Civil Procedure 56(a), for partial summary judgment on Plaintiff's claims premised on municipal

liability; conspiracy; unreasonable pre-arraignment detention; and the First, Eighth, Ninth, and

Thirteenth Amendments.  (Defs.' Mem. Law Supp. Mot. Partial Summ. J. 1-2).  Defendants do

not move for summary judgment on Ortiz's claims for false arrest, malicious prosecution, or

excessive force under Title 42, United States Code, Section 1983, and the Fourth and Fourteenth

Amendments.  (*Id.* at 2).  For the reasons that follow, Defendants' motion for partial summary

judgment is GRANTED.

## BACKGROUND

       The facts relevant to this motion are largely uncontested.  Defendants filed a Statement of

Undisputed Facts (Docket No. 46) and a declaration with seven exhibits (Docket No. 44).

Pursuant to this Court's Local Rule 56.2, Defendants served Plaintiff with notice that, in opposing their motion for summary judgment, he could not simply rely on his pleadings and must instead put forward evidence sufficient to show that there is a genuine dispute as to material facts.  (Docket No. 47).  Although Plaintiff did not file a statement of undisputed facts as required by Local Rule 56.1, he did supply a brief affidavit (Docket No. 50), as well as audio recordings of his depositions dated August 28, 2012, and December 7, 2012 (Docket No. 49).[1]

When considering a motion for summary judgment, this Court views the evidence in the light most favorable to the non-moving party.  *See Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004).  In light of that and the Court's obligation to grant *pro se* litigants opposing motions for summary judgment "special solicitude," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has therefore considered evidence submitted by Plaintiff despite his failure to submit a Local Rule 56.1 statement.  *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions . . . .") (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).  Except where noted, the following facts are undisputed.

On the evening of October 17, 2010, Officers Braunreuther and Deoliveira approached Plaintiff outside the building located at 1851 Third Avenue, New York, New York.  (Decl. Scott Kantor Ex. B, at 96; Ans. ¶ 3).  Officers Braunreuther and Deoliveira asked Plaintiff several

---

[1]      The transcripts of Plaintiff's deposition submitted by Defendants are dated November 28, 2012, and December 7, 2012.  The audio recordings submitted by Plaintiff, which he appears to have created himself, are dated August 28, 2012, and December 7, 2012.  As the recordings are not authenticated, the Court relies on them only to clarify the nature of Plaintiff's claims.  Even if the Court were to consider them, they would not change the Court's analysis or conclusions.

times for identification, which Ortiz declined to provide. (Kantor Decl. Ex. B, at 110-11). During the confrontation, Ortiz used his cell phone to capture a video recording of the incident. (*Id.* at 110-112). In doing so, Plaintiff held his phone as close as one foot from Officer Deoliveira's face. (*Id.* at 112). Shortly after Plaintiff began recording Officers Braunreuther and Deoliveira, the Officers took Plaintiff's phone from him and placed him under arrest; although the amount of force used in doing so is disputed, Plaintiff swears that Officer Braunreuther forcefully slapped his cell phone away without verbal warning. (*Id.* at 119; Ans. ¶ 4; Affirmation Opp. Mot., Ex D1, "deposition Aug 28th 2012.amr," at 2:48:50).[2] According to the arrest report, the stated basis for Plaintiff's arrest was criminal trespass of the building in front of which the Defendants encountered him. (Kantor Decl. Ex. D). The parties contest whether Plaintiff voluntarily set foot inside that building; Plaintiff maintains that he was taken inside the building by force. (Kantor Decl. Ex. B, at 119).

After his arrest, Plaintiff was taken to the 23rd Precinct, where he was searched, fingerprinted, and photographed. (*Id.* at 124, 128). He was placed in a holding cell and later questioned by police, but validly asserted his right to counsel and declined to answer any questions. (*Id.* at 128, 135). At around 5:00 a.m. on the morning of October 18, 2010, Plaintiff was transported to Manhattan Central Booking. (Kantor Decl. Ex. C, at 144; Kantor Decl. Ex. E). He was arraigned at approximately 11:00 p.m. that evening. (Kantor Decl. Ex. C, at 149-50; Kantor Decl. Ex. G). All charges against Plaintiff arising from the events of October 17, 2010, were eventually dismissed. (Kantor Decl. Ex. C, at 155-57). On November 4, 2011, Plaintiff filed the instant lawsuit. (Docket No. 1). He seeks $10,000,000 in damages. (Compl. at 6).

---

[2] "Deposition Aug 28th 2012.amr" refers to a file by that name on the compact disc submitted by Plaintiff.

**DISCUSSION**

Defendants collectively move for partial summary judgment on all but Plaintiff's false arrest, malicious prosecution, and excessive force claims.  First, they challenge Plaintiff's claims against the City of New York on the grounds that he has not pleaded or adduced any evidence suggesting that the actions alleged in the Complaint were part of a plan or custom of the City of New York.  (Defs.' Mem. 4-8).  It is well established that, in order to establish municipal liability for unconstitutional acts by municipal employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal policy, custom, or practice.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Although Plaintiff alleged in his Complaint that Officers Braunreuther and Deoliveira acted in "accordance with established policy" (Compl. 5), he has submitted no evidence tending to show that is the case.  Plaintiff relies solely on a copy of the charter of the City of New York (Aff. Opp. Mot. Ex. B1) and conclusory affirmations that the Officers acted pursuant to municipal policy.  Such evidence is insufficient for Plaintiff's *Monell* claim to survive summary judgment.  *See, e.g.*, *Manganiello v. City of New York*, No. 07 Civ. 3644 (HB), 2008 WL 2358922, at *10 (S.D.N.Y. June 10, 2008) ("[T]he mere assertion that a municipality has . . . a policy is insufficient to establish *Monell* liability . . . ." (internal quotation marks omitted)).  As a result, all claims against the City of New York are dismissed.

Second, Defendants challenge Plaintiff's conspiracy claims because he pleaded only conclusory allegations of conspiracy and failed to allege, let alone introduce evidence tending to show, that Defendants acted outside the scope of their employment.  (Defs.' Mem. 8-10).  As Defendants argue, Plaintiff's allegations are barred by the intra-corporate conspiracy doctrine, which "posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with

4

each other." *Dunlop v. City of New York*, No. 06 Civ. 433 (RJS), 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) (internal quotation marks omitted).  Accordingly, he fails to state a valid conspiracy claim as a matter of law, and that claim is dismissed.

Third, Defendants move for summary judgment with respect to Plaintiff's claim of pre-arraignment delay.  (Defs.' Mem. 10-13).  Plaintiff purports to plead a cause of action under New York Criminal Procedure Law § 140.20, which requires defendants arrested of misdemeanors to be brought before a court to be formally charged with a crime without "unnecessary delay."  The Second Circuit has made clear, however, that Section 140.20 does not create a private right of action.  *See Watson v. City of New York*, 92 F.3d 31, 36-37 (2d Cir. 1996).  To the extent that Plaintiff's claim is construed as a claim under the Fourth Amendment, it fails for a different reason: He was detained for fewer than forty-eight hours, and he has introduced no evidence that the alleged delay was unreasonable.  *See, e.g.*, *Irons v. Ricks*, 02 Civ. 4806 (RWS), 2003 WL 21203409, at *9 (S.D.N.Y. May 22, 2003) ("Although a delay of less than forty-eight hours can violate federal law if a petitioner can demonstrate that the delay was unreasonable, the presumption remains that the state has acted lawfully up until that point.") (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991)).

Fourth, Defendants argue that Plaintiff has failed to state a valid retaliation claim under the First Amendment (Defs.' Mem. 13-15) or, alternatively, that Officers Braunreuther and Deoliveira are entitled to qualified immunity on those claims (*id.* at 17-21).  Defendants begin from the dubious premise that "it is at best questionable whether plaintiff's [video recording of police officers conducting their official duties] is a protected activity."  (*Id.* at 14).  Both the First and Seventh Circuits, the only federal courts of appeals to have considered the question recently, have held that the First Amendment protects the right to video record police officers in the

course of their official duties.  *See ACLU v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012)

(describing as "extraordinary" and resting on "misunderstandings" the argument that the First

Amendment provides no protection to individuals recording police officers performing their

official duties in a traditional public forum like a sidewalk); *Glik v. Cunniffe*, 655 F.3d 78, 85

(1st Cir. 2011) (concluding that the right to record police is both "fundamental" and "self-

evident"); *see also Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *25

(Jan. 3, 2013) ("[T]his Court is inclined to agree with the First, Seventh, Eleventh, and Ninth

Circuits that the photography and recording of police officers engaged in their official duties 'fits

comfortably' within First Amendment principles . . . .").  Additionally, the United States

Department of Justice has taken the position that the First Amendment protects the right to

record police officers performing their official duties even in courts where that principle is not a

matter of binding precedent.  *See, e.g.*, Statement of Interest of the United States, *Garcia v.

Montgomery Cnty., Md.*, No. 8:12-cv-03592-JFM (D. Md. Mar. 4, 2013).

      Nevertheless, the Court need not decide the question here, as Defendants also argue that

Officers Braunreuther and Deoliveira are entitled to qualified immunity on Plaintiff's First

Amendment claims.  When facing the two-pronged qualified immunity analysis — that is,

(1) whether a constitutional violation has occurred and (2) whether the right was clearly

established at the time — district courts enjoy discretion to order the steps of their analysis based

on the facts of a particular case.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  In order to

be "clearly established," a principle must be embodied in the "decisional law of the Supreme

Court and the [Second Circuit]."  *Shechter v. Comptroller of N.Y.*, 79 F.3d 265, 271 (2d Cir.

1996) (internal quotation marks omitted).  Here, because neither the Supreme Court nor the

Second Circuit has addressed the right in question, *see Mesa*, 2013 WL 31002, at *25, it follows

that the right was not clearly established on October 17, 2010. *See also Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010); *Szymecki v. Houck*, 353 F. App'x 852, 853 (4th Cir. 2009). Accordingly, even if Plaintiff has alleged a constitutional violation, Defendants are entitled to qualified immunity, and Plaintiff's First Amendment claims are dismissed on that ground alone.

Fifth, Defendants argue that Plaintiff has failed to state an Eighth Amendment claim because he was never convicted of a crime. (Defs.' Mem. 15-16). This Court construes Plaintiff's claims liberally to plead a claim under the Due Process Clause of the Fourteenth Amendment. Even so construed, Plaintiff fails to adduce facts sufficient to show that his injuries were sufficiently serious to establish a constitutional violation or that his treatment amounted to "deliberate indifference" to his medical condition. *See Caiozzo v. Koreman*, 581 F.3d 63, 70-72 (2d Cir. 2009) (adopting a subjective deliberate indifference standard for claims brought by pretrial detainees). Plaintiff's subjective report of his own injuries listed only bruised forearms, mental anguish, and subjective pain. (Compl. 4). These alleged injuries are not sufficiently serious to establish a claim under the Due Process Clause. *See, e.g.*, *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." (internal quotation marks omitted)). Moreover, Plaintiff fails to allege, let alone show, that either Defendant was deliberately indifferent to his medical needs.

Finally, Defendants contend that Plaintiff has failed to state claims under the Ninth or Thirteenth Amendments because the Ninth Amendment provides no private right of action (Defs.' Mem. 16) and because Plaintiff was not subjected to involuntary servitude (*id.*). Defendants are correct. There is no private right of action under the Ninth Amendment. *See,*

*e.g.*, *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007).  And the Thirteenth Amendment has no

application to claims involving false arrest.  *See, e.g.*, *Campbell v. Giuliani*, No. 99 Civ. 2603

(JG), 2000 WL 194815, at *4 n.8 (E.D.N.Y. Feb. 16, 2000).  Accordingly, Plaintiff's claims

under the Ninth and Thirteenth Amendments are hereby dismissed.

### CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment is

GRANTED.  Plaintiff's claims against Officers Braunreuther and Deoliveira for false arrest,

malicious prosecution, and excessive force remain and will proceed to trial.  In light of the

substance of those claims, this Court exercises its discretion under Title 28, United States Code,

Section 1915(e)(1) to appoint *pro bono* counsel to Plaintiff.  *See Cooper v. A. Sargenti Co., Inc.*,

877 F.2d 170, 174 (2d Cir. 1989).

The Clerk of Court is directed to terminate Docket Number 43 and to mail a copy of this

Memorandum Opinion and Order to Plaintiff.

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that

any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus

denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: September 24, 2013
       New York, New York

_____
JESSE M. FURMAN
United States District Judge